IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

YANIRA I. PADILLA-TORRES,

    Plaintiff,

    v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

CIVIL NO. 14-1181 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Yanira I. Padilla-Torres ("Plaintiff") filed this action to obtain judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner" or "Defendant"), inasmuch as she was unhappy with the determination that she was not disabled.[1] (Docket No. 1). On March 14, 2014, Plaintiff filed a consent to proceed before a United States Magistrate Judge for all further proceedings, including the entry of judgment. (Docket No. 5).[2] On September 8, 2014, the Commissioner answered the Complaint and filed a copy of the administrative record. (Docket Nos. 10 and 11). On January 21, 2015, Plaintiff filed her memorandum of law. (Docket No. 22). On May 4, 2015, the Commissioner filed her memorandum of law. (Docket No. 27).

---

[1] 42 U.S.C. § 405(g), provides for judicial review of the final decision of the Commissioner. "… [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[2] The government has already provided a general consent to proceed before a Magistrate Judge in all Social Security cases. 28 U.S.C. § 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

After careful review, the Court REMANDS the present case to the Administrative Law Judge ("ALJ") for further proceedings as instructed herein, to wit, to obtain further psychological information and then re-evaluate the totality of Plaintiff's physical and mental ailments.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

On October 1, 2008, Plaintiff filed an initial application for disability benefits alleging disability since June 28, 2007 and with a last insured status of September 30, 2012. The application was initially denied via a decision dated June 4, 2010, but was remanded by the Appeals Council on April 2, 2012. (Tr. pp. 120-121). Specifically, the Appeals Council instructed the ALJ to give further consideration to Plaintiff's residual functional capacity ("RFC"), to provide a function by function assessment of her ability to perform work related activities and to obtain evidence from a Vocational Expert ("VE") to clarify the effect of the assessed limitations on Plaintiff's occupational base. Id. The Appeals Council clearly warned that the hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. Id.

Plaintiff filed a subsequent application for a period of disability and disability insurance benefits in May, 2011. Since the new alleged disability date fell within the period covering the original claim, the Appeals Council ordered the claims consolidated. Id.

On September 20, 2012, an administrative hearing was held, without the presence of Plaintiff, who had previously waived her right to a hearing. The presiding ALJ issued an opinion on September 28, 2012, where she made the following findings of fact:

1. Plaintiff last met the insured status requirements of the Social Security Act through September 30, 2012.

2. Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of June 28, 2007 through the last insured date of September 30, 2012.

3. Through the last insured date, Plaintiff had the following severe impairments: lumbar degenerative disc disease, posterior discal hernia at L5-S1, back pain syndrome, scoliosis, spine stenosis, degenerative disc disease at the L5-S1 level and anxiety.

4. Through the last insured date, Plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, through the last date insured, Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1567 (a), except that she could not be exposed to unprotected heights or moving machinery. The ALJ further found that Plaintiff could occasionally crawl, crouch, squat, bend, kneel and stoop. She had no communicative or visuals (sic).

6. Based on Plaintiff's allegations of pain, she was able to perform simple and repetitive tasks and to relate with supervisors adequately. Plaintiff was able to have an occasional conversation with co-workers but unable to work as a team and unable to be in contact with the general public.

> 7. Plaintiff was able to work with objects rather than with individuals, and was able to maintain the concentration, persistence and pace to deal with routine changes in work settings and to use her judgment.
>
> 8. Through Plaintiff's last date insured, she was unable to perform any past relevant work.
>
> 9. Plaintiff was born on November 3, 1982 and was 29 years old on the last insured date, which is defined as a younger individual age 18-44.
>
> 10. Plaintiff has at least a high school education and is unable to communicate in English.
>
> 11. Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.
>
> 12. Through Plaintiff's last insured date, considering her age, education, work experience and RFC, there were jobs which existed in significant numbers in the national economy that Plaintiff could have performed.
>
> 13. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from June 28, 2007, the alleged onset date, through her last insured date of September 30, 2012. (Tr. p. 18-30).

Thus, after analyzing all the factors, the ALJ opined that Plaintiff did not have the capacity to perform her previous work, but considering all the relevant factors, there were jobs in significant numbers in the national economy that Plaintiff could perform and found her not disabled. (Tr. pp. 28-29). The Appeals Council subsequently denied Plaintiff's

request for review, thus making the ALJ's decision the final decision of the Commissioner, subject to review by this Court. (Tr. pp. 1-3).

Plaintiff objects the ALJ's final decision denying her disability benefits, alleging that the ALJ's decision was not based on substantial evidence. Specifically, Plaintiff alleges no psychiatric evidence was left on record to determine that Plaintiff's mental condition did not preclude her from working, and further, that the hypothetical question posed to the VE was incorrect. Therefore, Plaintiff claims that the ALJ's conclusion was unsupported by the record. The Commissioner differs.

## LEGAL STANDARD

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; see Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a medically severe impairment or combination of impairments. See §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e).

Once the ALJ determines that the claimant cannot perform his or her former kind of work, then the fifth and final step of the process demands a determination of whether the claimant is able to perform other work in the national economy in view of his or her RFC, as well as their age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform any other work. §§ 404.1520(f).

In the case at bar, the ALJ determined at steps 4 and 5 that Plaintiff was not able to perform her past work as a fast food worker/cashier, but that there were other jobs available in the national economy that she could perform.

**LEGAL ANALYSIS**

The Court's review in this type of case is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. See Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999). Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), *quoting* Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The court will set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. See Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

    The issue in this case stems from the evidence (or lack thereof) of Plaintiff's psychological condition. At the time the hearing was held, Plaintiff exercised her right not to be present at the same. Therefore, the ALJ had to rely on the existing medical record in order to determine Plaintiff's mental RFC and subsequent ability to work. A Medical Expert ("ME") testified at the hearing regarding Plaintiff's allegations of a disabling mental condition. However, upon being questioned by the ALJ, it became clear the ME could not give an opinion as to Plaintiff's mental capacity because the record contained no evidence upon which to ground such an opinion. Notwithstanding the ALJ's repeated attempts to get the ME to give a different answer to her question, the ME time and again stated there was no evidence in the file to reach any conclusion regarding Plaintiff's mental capacity, specifically, regarding her need for treatment or regarding the severity of Plaintiff's condition. (See Tr. p. 47, 49, 50, 56, and 57). Therefore, the ME had no opinion about this particular Plaintiff's mental capacity. ("If it is not there, it just means that it is simply not there, so there is no opinion about any evidence that is not there", "…there is no sufficient evidence to be able to confirm regarding the current functionality of this claimant" (sic)). (Tr. pp. 57 and 58). Consequently, the ME rendered no opinion (one way or another) regarding Plaintiff's mental capacity.

    An examination of the record shows it contains several mental examinations which would have aided the ALJ in determining Plaintiff's mental RFC. Yet, in rendering her opinion, the ALJ discarded practically all of them, and the one she gave only partial weight

to, gave Plaintiff a GAF of 45.[3]  The end result was that the ALJ was essentially left with no psychiatric evidence at all on which to base her decision.

Plaintiff's treating physician was Dr. Aurelio Collado, who had been treating Plaintiff since 2007.  On three different occasions, the Commissioner sent a form for him to fill out detailing Plaintiff's psychiatric condition.  On those three occasions, his conclusions were the same: that Plaintiff was completely disabled. (Tr. p. 573 (2008); p. 568 (2009); p. 576 (2010)).  The transcript also included progress notes from his sessions with Plaintiff.  (Tr. pp. 598-601).  In spite of this, the ALJ gave little weight to his diagnosis, erroneously stating that Dr. Collado "did not provide any detailed medical findings" and "provided no supporting documentation", when in fact his treatment notes, from Plaintiff's sessions with him, were plainly included in the record.  (Tr. p. 27). The ALJ also mistakenly stated that Dr. Collado was the agency non-examining psychologist, when in fact he was Plaintiff's treating physician. (Id.)

The agency's examining consulting psychiatrist, Dr. Alberto Rodríguez-Robles, examined Plaintiff in June, 2009.  The ALJ opined that, his conclusion that Plaintiff was unable to manage funds, was inconsistent with his own findings, insofar as he also found her logical, coherent and with adequate judgment. (Id.)  Yet, the record shows Plaintiff's attention and concentration were diminished, her affect restricted, her mood depressed, and she was apprehensive, with psychomotor retardation, easily distracted and could not

---

[3] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. The score is often given as a range. Since 2013, the GAF is no longer used in the DSM-5. A score of 41 - 50 means serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work)

follow the backwards sequence of the months. (Tr. p. 656). The ALJ gave Dr. Rodríguez-Robles' opinion little weight because of this alleged discrepancy.

Dr. Efrén Mangual-Cordero, another state examining physician, examined Plaintiff in December, 2011. He gave Plaintiff a GAF of 45. The ALJ was a little more generous with him, giving his opinion partial weight, finding again that his conclusion of the 45 GAF score was inconsistent with his findings that Plaintiff was alert, logical and oriented. Yet, Dr. Mangual-Cordero also found Plaintiff had superficial insight, was sad, with restricted affect, partially cooperative, evading his gaze, that she needed assistance to perform many household chores and did not perform a great many others. (Tr. p. 707).

The ALJ then concluded the state agency physicians had only examined Plaintiff on one occasion and did not have a treatment relationship with her so as to provide a longitudinal picture. (Tr. p. 28). However, the ALJ discarded the opinion of Dr. Collado, who provided precisely the longitudinal picture she avers was lacking in the agency physicians, and then gave little weight to the agency physicians because of the lack of longitudinal treatment. Although the ALJ does not mention it in her opinion, the RFC assessments performed were also done by agency physicians that, according to the ALJ's reasoning, could not offer a longitudinal picture since they did not even examine Plaintiff. Thus, their conclusions must also have been discarded. The ALJ was thus left with little or no information in which to base her opinion. Because of this, the Court must necessarily conclude that the ALJ's opinion cannot be based on "substantial evidence" in the record. Simply put, there is no way that the ALJ could have determined Plaintiff's mental RFC after

having discarded almost all medical opinions. Consequently, the ALJ had no evidence in which to base her findings, much less substantial, as required under case law.

The ALJ's unfortunate dismissal of all relevant evidence, in turn, affected the hypothetical questions posed to the VE. As has been well established, "[i]f a vocational expert's testimony is to have any probative value, the hypothetical questions posed to the expert must contain the relevant facts." Padilla v. Barnhart, 186 Fed. Appx. 19, 21 (1st Cir. 2006). Thus, the VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect Plaintiff's functional work capacity. See Arocho v. Sec'y of Health and Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). In other words, the VE's testimony must be predicated on a supportable residual functional capacity assessment. See 20 C.F.R. § 404.1520(g)(1). An ALJ is not qualified to determine a claimant's residual functional capacity on the basis of the raw medical evidence, but instead must look to a medical expert to do so. Berríos López v. Sec'y of Health & Human Servs., 951 F.2d 427, 430 (1st Cir. 1991); Rosado v. Sec'y of Health & Human Servs., 807 F.2d 292, 293 (1st Cir. 1986).

Therefore, the only evidence the ALJ could have permissibly relied on to reach her conclusions regarding Plaintiff's RFC were: (1) the medical records; or (2) expert medical testimony that discussed her impairments in functional terms. That did not occur here, as the ALJ discarded the record evidence and the ME, who testified at the hearing, stated she had no opinion regarding Plaintiff's capacity. Because of this, the ALJ's statements to the VE cannot be founded on substantial evidence. See Cooper v. Sullivan, 880 F.2d 1152, 1158 n. 13 (9th Cir. 1989) ("A vocational expert's testimony cannot constitute substantial

evidence to support an ALJ's determination as to a claimant's disability status unless it accurately reflects all of the claimant's limitations, including pain"); López-Montalvo v. Comm'r of Social Sec., 2011 WL 2650705, at*2 (D.P.R. July 6, 2011) ("If substantial evidence does support the premises for the hypotheticals, then the VE's answers constitute substantial evidence to back up the ALJ's decision"); Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994)("[u]nless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ....a determination of non-disability based on such a defective question cannot stand.")

Since the hypotheticals posed to the VE were not supported by Plaintiff's real abilities because of the lack of evidence, the Court cannot find that the VE's responses were based on substantial evidence. The Court must therefore necessarily conclude the ALJ's decision was not based on substantial evidence.

This Court must affirm the Commissioner's decision "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir.1987); Coggon v. Barnhart, 354 F.Supp.2d 40 (D.Mass. 2005). Both statute and long established case law make clear that the Court's function is a narrow one limited to determining whether there is substantial evidence to support the Secretary's findings and whether the decision conformed to statutory requirements. Geoffroy v. Sec'y of Health and Human Servs., 663 F.2d 315, 319 (1st Cir.1981). The Court cannot so find here.

In view of the foregoing, the Court finds the decision of the Commissioner is not supported by substantial evidence on the record. As such, the case is remanded for the ALJ to resolve the issue regarding the psychological evidence on record and if necessary, obtain further information, in order to the re-evaluate Plaintiff's mental and physical functional capacity based on the evidence of record as a whole.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge REMANDS this case for the Commissioner to conduct further proceedings consistent with this Opinion and Order.

Judgment is to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 15th day of September of 2015.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE